**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRIS MANWARING** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-2199** |
| | : | |
| **PA STATE TROOPER** | : | |
| **MICHAEL ROGERS, ET AL.** | : | |

**McHUGH, J.** **September 11, 2026**

## MEMORANDUM

This is a civil rights action arising out of Plaintiff Chris Manwaring's arrest after troopers from the Pennsylvania State Police answered a call about a volatile domestic dispute at his residence. His claims against the responding troopers include excessive use of force, false arrest, malicious prosecution, and battery. All of Plaintiff's interaction with the state troopers occurred outside and was captured by a Mobile Vehicle Recorder ("MVR") on their marked patrol car. That video provides objective, real-time evidence of Plaintiff's encounter with the state troopers. Having reviewed that footage together with undisputed deposition testimony, I conclude that no reasonable jury could find in Plaintiff's favor. I will therefore grant the pending motion for summary judgment.

### I. Procedural posture of this case

The original case management order was issued on October 31, 2023. ECF 9. Multiple extensions were granted, and in October 2024 counsel for plaintiff advised that he had suffered a stroke, been involved in a serious accident, and then diagnosed with cancer. ECF 15. A stay was granted and other attorneys entered their appearance on Plaintiff's behalf. In May, 2025, I granted their motion for leave to withdraw as counsel, ECF 23. Plaintiff was then granted multiple further extensions to allow him time to retain counsel. As of March, 2026, I concluded

that additional extensions were unwarranted and ordered that the case must proceed. ECF 33. Plaintiff responded that he intended to represent himself. ECF 34. Defendants filed a timely motion for summary judgment under the controlling case management order. That motion has been pending since May 13, 2026, ECF 37, and Plaintiff has filed no response. Because Plaintiff has been given ample time within which to oppose the motion, further delay is unwarranted, and I address the merits below.

## II. Standard of review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as illuminated by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23 (1986). Also relevant here is the Supreme Court's emphasis on video evidence in *Scott v. Harris,* 550 U.S. 372, 380–81, (2007).

## III. The factual record

The Defendant troopers were dispatched in response to a 911 call from a family member reporting that their mother, Tracey Manwaring, had been in a verbal altercation with her husband, Plaintiff Chris Manwaring, that had turned physical. General Offense Report No. PA 2021-812898, ECF 37-3. The troopers arrived at the residence in a marked PSP vehicle equipped with a functioning MVR. ECF 38-1. The recorder captured Commonwealth Defendants arriving at Plaintiff's home and pulling into the driveway. MVR at 1:30. Tracey's daughter, Tabatha Rizzo, was waiting outside and approached the troopers. MVR at 2:13. Lights inside the house went on while they spoke with Rizzo. *Id.* Rizzo reported that her mother was inside the house with Plaintiff, describing him as an unstable alcoholic who had "a lot" of guns. *Id.* at 2:25-39.

Defendant Rogers proceeded to call over his vehicle's public announcement system, identifying himself as a State Trooper and telling Plaintiff that he "need[ed] to come outside." *Id.* at 3:54-4:28. Rogers then called using the PA system a second time, stating "Mr. Manwaring, this is Trooper Rogers, State Police." *Id.* at 5:01-5:06, after which Plaintiff exited the house. *Id*. at 5:22.

Trooper Jones testified that Plaintiff was acting aggressively, slurring his words and stumbling as he approached the officers while screaming at the top of his lungs. Jones Dep. at 12:22-13:4. This is confirmed by MVR footage that shows Plaintiff standing on a porch, stating "don't you fucking come in here." *Id.* at 5:29-31. Trooper Rogers said, "Chris, I'll come over and talk to you, we good?" *Id.* at 5:32-34. Plaintiff responded by calling Rogers a "fucking asshole." *Id.* at 5:36. Plaintiff continued to walk down a walkway towards the troopers. Commonwealth Defendants, as Trooper Rogers walked towards him. *Id.* 5:40-5:44. Plaintiff yelled at Trooper Rogers to "turn the fucking light off. Turn the lights off now. Now!" *Id.* at 5:44-5:47. Trooper Rogers responded, "I will, relax. I'm having the other guy [i.e., Trooper Jones] do it." *Id.* at 5:47-49. Although Plaintiff testified that he "never heard anything from [the troopers] until after [he] was tased," MVR footage contradicts this as it shows he was conversing with them. *Compare* Transcript of Deposition of Chris Manwaring, at 31:2-3 ECF 37-5, *with* MVR at 5:29-6:08.

Plaintiff approached Trooper Rogers with his arms wide, stating "go ahead, pull your gun at me; I ain't got nothing." *Id*. at 5:50. Trooper Rogers responded, "why would I pull my gun on you," *id.* at 5:53, to which Plaintiff replied by pointing at Trooper Jones and saying, "fuck you, you've got a gun right there," gesturing at Trooper Jones' service weapon. *Id.* at 5:55. Trooper Jones warned Plaintiff to not "come any closer" to him. *Id.* at 5:56. MVR footage then shows Plaintiff's wife Tracey exiting from the home and yelling "stop." *Id.* at 5:52.

Trooper Rogers instructed Plaintiff, "Ok, Chris, I am going to need you to turn around," and reached for handcuffs as Plaintiff turned away from Commonwealth Defendants in the direction of his house. *Id.* at 5:55. Plaintiff responded, "no, I ain't going" and began to back-pedal sideways towards his house, while saying "you ain't fucking handcuffing me." *Id.* at 5:58-6:00. Trooper Rogers replied, "Chris, Chris," and followed while continuing to reach for his handcuffs. *Id.* at 6:00. Trooper Jones then ran towards Plaintiff and Rogers, who were standing a few feet from each other. *Id.* at 6:02.

Trooper Rogers put his hands on Plaintiff's arm to attempt to gain physical control over Plaintiff, starting "you're going," as Plaintiff continued to back-pedal and move towards the house stating, "I ain't going." MVR at 6:00-6:04. Plaintiff then swiped Trooper Rogers' hands away from his. *Id.* at 6:05. Observing this interaction, Plaintiff's wife Tracey described her husband as "pushing away" from the troopers because he "refused to get handcuffed." Transcript of Deposition of Tracey Manwaring, ECF 37-6, at 30:16-19. Trooper Rogers later testified that he sought to prevent Plaintiff from re-entering his house because it is standard operating procedure to separate the parties when responding to a domestic incident. ECF 37-2 at 16:25-17:7.

As Plaintiff backed away further from Commonwealth Defendants, Trooper Rogers ordered him to get down on the ground. MVR at 6:05-08. Trooper Jones can be seen holding the taser in Plaintiff's direction. *Id.* at 6:05. Jones warned Plaintiff that he would be tased. MVR at 6:02-05. Trooper Jones then tased Plaintiff in the driveway. *Id.* at 6:08. The warning was loud enough that Plaintiff's wife could hear it from where she was. ECF 37-6 at 29:5-6.

After being tased, Plaintiff can be heard continuing to yell profanities at the Troopers stating that he "didn't do anything." MVR at 6:21-22. Plaintiff appeared to start moving, and Trooper Rogers warned "Chris, he's going to do it again," referring to Trooper Jones' taser. *Id.* at

6:27-28. Meanwhile Rogers told Plaintiff, "Stop. Let me cuff you, and it's over." *Id.* at 6:30. Plaintiff's noncompliance continued and he yelled, "let me talk to my wife right now. Let me talk to my wife." *Id.* at 6:33. Trooper Rogers said, "Chris, it's over, " *id.* warning "I'm going to tase you again, Stop." *Id.* at 6:35-36. Trooper Rogers told Plaintiff, "Give me your other hand for a second. Relax. Take a breath. It's over. We're not going to fight. We're going to discuss this like adults." *Id.* at 6:37-44. Rogers then successfully put the handcuffs on Plaintiff after ordering Plaintiff multiple times to give him his hands. *Id.* at 7:00-35. The trooper can be heard agreeing to cuff Plaintiff from the front after Plaintiff told him that he has "bad shoulders." *Id.* at 7:30-31.

Plaintiff remained agitated and confrontational. He accused the troopers of shooting him with the taser in his back. *Id.* at 7:56-58. Trooper Jones defended his actions to Plaintiff, "Hey man, you're shouting and screaming." *Id.* at 7:58-59. Trooper Rogers added, "You're not being compliant. I am trying to detain you and you are trying to fight back with me." *Id.* at 8:00-05. Plaintiff told Trooper Rogers they had no reason to detain him because he "didn't do anything," before yelling, "I did fucking nothing!" *Id.* at 8:05-10. Plaintiff continued to yell at the Commonwealth Defendants. *Id.* at 8:16-17, 30-31. This included calling them "fucking assholes, *id.* at 8:50, "motherfuckers," *id.* at 19:16, 19:37, "scumbags," *id.* at 9:33, 10:02, and "piece[s] of shit." *Id.* at 9:45. Trooper Jones told Plaintiff, "You should have complied with what the officer was telling you," prompting Plaintiff to loudly yell, "I did. I said you ain't cuffing me motherfuckers." *Id.* at 9:46-52. As Plaintiff yelled, Trooper Rogers cautioned Plaintiff, "Listen, your neighbors are going to hear this," prompting Plaintiff to scream, "I don't care!" *Id.* at 9:56-59. Trooper Rogers said to Plaintiff, "I was trying to talk to you, and you're flipping out and screaming." *Id.* at 10:14-17. Plaintiff then yelled, "I put my hands up and said, you're not cuffing me." *Id.* at 10:18-20. Trooper Rogers told Plaintiff he was arguing with them about the lights,

and Plaintiff responded, "and you said, you're going to cuff me and I told you you weren't cuffing me and I fucking backed up, I backed away from you." *Id.* at 10:22-27. Trooper Rogers again told Plaintiff that he was "yelling and screaming and raising [his] voice," *id.* at 11:31-33, to which Plaintiff responded, "because I'm pissed the fuck off." *Id.* at 11:34-35.

Defendants then contacted Emergency Medical Services to evaluate Plaintiff following the tasing. When asked by the Emergency Medical Technicians ("EMTs") if he was "feeling okay," Plaintiff told them that he was "fine," denying any head or chest pain. MVR at 19:13-21. He also yelled and cursed at the EMTs. *Id.* at 20:45-21:01; 27:10-33:12.

On scene, Tracey Manwaring told Trooper Rogers that she had called her son that evening because Plaintiff was "out of control," and that it was "getting worse." MVR at 25:43-48. She also told Trooper Rogers that Plaintiff shoved and grabbed her after she asked for a divorce and yelled at her saying that she would "be getting nothing" in the divorce. MVR at 26:38-27:00. In a written statement, ECF 37-3 at PSP0000040, Mrs. Manwaring wrote that she called her son, Kyle Buckley to tell him that she was scared because Plaintiff was "drunk, loud, profane, cursing, screaming at [her], and got in [her] face." *Id.* She also recounted that she had hidden in a separate part of the house because she was afraid of him. *Id.*

Trooper Rogers authored a criminal complaint charging Plaintiff with: (1) Harassment, in violation of 18 Pa.C.S. § 2709(A)(1); (2) Resisting Arrest, in violation of 18 Pa.C.S. § 5104; and (3) Disorderly Conduct, in violation of 18 Pa.C.S. § 5503(A)(2). The Bucks County District Attorney's Office negotiated a guilty plea to disorderly conduct and withdrew the resisting arrest and harassment charges against Plaintiff after Mrs. Manwaring refused to testify, and Plaintiff was ordered to pay court fines and costs. *Id.* at PSP0000045. This action followed.

## IV. Discussion

As noted at the outset, an important aspect of this case is the existence of contemporaneous video evidence. In *Scott v. Harris*, 550 U.S. 372, 380–81, (2007), the Supreme Court instructed that in deciding motions for summary judgment courts should evaluate the record in light of available video evidence where it definitively rebuts a party's version of events. Here, the video captures the entire encounter between Plaintiff and the Defendant troopers, and given what it portrays, no reasonable jury could find in Plaintiff's favor. This suffices as a basis for summary judgment. *Tindell v. Beard*, 2009 WL 1579541 (W.D. Pa. 2008) *aff'd,* 351 Fed.Appx. 591, 596 (3rd Cir. 2009).

### *A. Excessive force*

A claim that a police officer used excessive force during a seizure is "properly analyzed under the Fourth Amendment's objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Police officers have a legal privilege to commit a battery pursuant to a lawful arrest, but the privilege can be negated if the force is excessive. *Edwards v. City of Phila.,* 860 F.2d 568, 572 (3d Cir. 1988).

In determining whether the use of force is objectively reasonable, the courts may consider the following factors: (1) whether the suspect posed an immediate threat to the officers' or the public's safety; (2) whether the suspect attempted to flee or resist arrest; (3) the duration of the action; (4) whether the applied force took place in the context of effecting an arrest; and (5) the possibility that the suspect may be armed. *See Graham,* 490 U.S. at 396.

Courts must "consider the totality of the circumstances, including the police officer's knowledge, experience, and common-sense judgments about human behavior," *United States v. Robertson*, 305 F.3d 165, 167 (3d Cir. 2002), and "assess the circumstances that [] officers face[]

'against an objective standard' and ask whether 'the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *United States v. Jackson*, 120 F.4th 1210, 1224 (3d Cir. 2024). Because the determination of reasonableness is "[in]capable of precise definition or mechanical application" it requires "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396 (internal citation omitted). A court must evaluate the reasonableness of "a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while recognizing "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

Plaintiff's complaint pleads excessive force only in general terms. ECF. 1 at ¶ 20. On the record here, the only force applied by Trooper Rogers was the application of handcuffs, which Plaintiff does identify as the focus of his complaint. Indeed, as noted above, Rogers accommodated Plaintiff's request to be handcuffed in front. There is no evidence to support a claim against Rogers, and he is therefore entitled to summary judgment. *See Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 894 (E.D. Pa. 2017).

The claim against Trooper Jones obviously requires more extensive analysis. Tasers are a form of non-lethal force that officers can lawfully employ, *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 393 (E.D. Pa. 2010), and courts in this circuit have held that use of a taser can be appropriate where necessary to effectuate an arrest. *See, e.g.*, *Patrick v. Moorman*, 855 F. Supp. 2d 392 (E.D. Pa. 2012), *aff'd* 536 Fed. Appx. 255 (3d Cir. 2013); *Brown v. Cuscino,* No. 08-CV-1224, 2011 WL 1085892 (W.D. Pa. Mar. 21, 2011), *aff'd* 484 F. App'x. 676, 679-80 (3d Cir. 2012) *Woods v. Grant,* 665 F. Supp. 2d 438, 445 (D. Del. 2009); *Wargo v. Mun. of Monroeville*, 646 F.

Supp. 2d 777, 786 (W.D. Pa. 2009).

Turning to the *Graham* factors, upon arrival at the scene, Jones was briefed by Mrs. Manwaring's daughter, who expressed concern for her mother's safety, reported Plaintiff's intoxication, and alerted the trooper to the presence of weapons in the house. When Plaintiff emerged, he was belligerent, obviously intoxicated, and repeatedly ignored the trooper's commands. He alternated from moving toward the troopers and the house. During this time, his wife had emerged, potentially making him a threat to each. The video does not suggest a weapon on Plaintiff's person, but at a minimum the trooper understood there to be weapons on site, and Plaintiff commented on the trooper's sidearm in a disconcerting way. The troopers were attempting to place him under arrest, at least temporarily, and he resisted. And the force used was minimal, a single burst of the taser, after a warning, which thankfully did not result in significant injury. The length of time between the warning and deployment was brief, but to second-guess that one decision would fail to accord the trooper the leeway to make quick judgments required by the controlling precedent. Given the totality of the circumstances, I hold that this use of force was objectively reasonable, entitling Trooper Jones to summary judgment.

*B. False arrest*

For constitutional purposes a false arrest is one made without probable cause. *Barna v. City of Perth Amboy,* 42 F.3d 809 (3d Cir. 1994). For purposes of a false arrest claim, in determining whether police had probable cause to arrest an individual, the proper inquiry "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause requires more than a "mere suspicion" that a person has committed a crime, but it

does not require an officer to have sufficient evidence to prove guilt beyond a reasonable doubt. *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984).

The crimes charged were: (1) Harassment, in violation of 18 Pa.C.S. § 2709(A)(1); (2) Resisting Arrest, in violation of 18 Pa.C.S. § 5104; and (3) Disorderly Conduct, in violation of 18 Pa.C.S. § 5503(A)(2).

As to Harassment, a person commits the offense when, "with intent to harass, annoy, or alarm another, the person: strikes, shoves, kicks, or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. § 2709(A)(1). Here, police were called to the scene by children, alarmed that their mother was in jeopardy, and on site, Mrs. Manwaring reported that her husband had pushed her, and she feared for her safety causing her to hide from Plaintiff in their house. Under Third Circuit precedent, this was a sufficient basis for the charge. *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477-78 (3d Cir. 2016) ("statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists.") (internal citation omitted).

A person resists arrest "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. The MVR footage establishes that Plaintiff refused multiple commands from the troopers to "turn around," "not come any closer," and let them handcuff him, and swiping away Trooper Rogers' hands while Trooper Rogers was trying to handcuff him. *See* MVR at 5:55-6:08. This was a sufficient basis for an arrest on that charge.

A person commits Disorderly Conduct where, "with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof, he . . . makes unreasonable noise." 18 Pa.C.S. § 5503(A)(2). The Pennsylvania Supreme Court has defined unreasonable noise as that which is "not fitting or proper in respect to the conventional standards of organized society or legally constituted community." *Commonwealth v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980) (internal citation omitted). As a threshold matter, Plaintiff's plea of guilty to this charge bars a subsequent § 1983 claim. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). And even though charges of disorderly conduct can unreasonably criminalize a wide swath of conduct, such a charge was reasonable here where Plaintiff persisted in screaming obscenities in a residential neighborhood late at night even as one of the troopers implored him to consider his neighbors.

Summary judgment is therefore warranted as to the false arrest claims.

*C. Malicious Prosecution*

To establish a claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (alteration in original).

This claim fails for multiple reasons, only two of which will be addressed. First, even assuming that the troopers can be deemed to have initiated the proceedings—as compared to the District Attorney— there was probable cause for all three charges. Second, Plaintiff cannot show that the prosecution ended in his favor. The harassment charge was withdrawn because his wife refused to testify, a common occurrence in cases of this kind. The remaining charges were resolved

by a plea bargain. The Third Circuit has held that the "favorable termination element properly focuses on the proceeding as a whole." *Kossler v. Crisanti,* 564 F.3d 181, 193 (3d Cir. 2009), *abrogated on other grounds* by *Thompson v. Clark,* 142 S. Ct. 1331 (2022). The controlling question is "whether the charge[s] resulting in [dismissal] arises out of the same conduct as the charge resulting in conviction." *Id.* at 190. Here, the disorderly conduct charge and charge of resisting arrest flowed from the same conduct. Plaintiff did not prevail on the charge of resisting arrest, he avoided it by virtue of a plea bargain requiring him to plead guilty to a related offense.

Summary judgment will also be granted as to this claim.

*D. Assault and Battery*

Under Pennsylvania law, the test for assault and battery mirrors the constitutional standard for excessive use of force, because "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994). For the reasons set forth above in evaluating Plaintiff's Fourth Amendment claim for excessive force, summary judgment is warranted on these claims as well.

**V. Conclusion**

Troopers Jones and Rogers acted within the bounds of the law throughout their interactions with Mr. Manwaring, and there is no basis on which a reasonable jury could find in Plaintiff's favor as to any of his claims. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge